ORDERED.

**Dated: September 20, 2018**

_Cynthia C. Jackson_
Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

MITCHELL ALLEN PROPSTER,                          Case No.: 6:11-bk-15434-CCJ
                                                  Chapter 7
        Debtor.
_____/

SALBA CORP., N.A., a Canadian corporation,        Adv. No.: 6:16-ap-00089-CCJ
SALBA SMART NATURALS PRODUCTS,
LLC a Colorado limited liability company,
WILLIAM A. RALSTON, and
RICHARD L. RALSTON

        Plaintiffs,
v.

MITCHELL ALLEN PROPSTER

        Defendant.
_____/

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

        This adversary proceeding came before the Court on the Motion for Partial Summary

Judgment, as supplemented (Doc. Nos. 7 and 20; collectively the "Motion"), filed by Plaintiffs,

SALBA Corp., N.A., SALBA Smart Naturals Products, LLC, William A. Ralston, and Richard

L. Ralston (collectively the "Plaintiffs"), and the Response to the Motion, as supplemented and amended (Doc. Nos. 11, 21, 32 and 34; collectively the "Response") filed by the Defendant, Mitchell Allen Propster (the "Debtor"). The Plaintiffs request summary judgment on Count II of the complaint, which seeks a determination that the amounts owed by the Debtor under a number of final district court orders are nondischargeable under Section 523(a)(6) of the Bankruptcy Code. Having considered the Motion and Response, along with argument of counsel and the Debtor--who appeared *pro se* at some hearings and with counsel at others--the Court grants the Motion for the reasons stated below.

<u>Findings of Fact</u>

On October 11, 2011, the Debtor filed for relief under Chapter 13 of the Bankruptcy Code. The Debtor later converted his case to Chapter 7. During the pendency of his bankruptcy (which was filed without notice to the Plaintiffs), the Plaintiffs commenced an action against the Debtor and others in the United States District Court for the District of Colorado, Civil Action No. 12-cv-01306-REB-KLM (the "District Court Action"). By the District Court Action, the Plaintiffs alleged that the Debtor and its affiliated entities infringed on the Plaintiffs' exclusive right to use the SALBA name and related marks in their sale of "counterfeit" chia seeds and other products. The Plaintiffs and the Debtor resolved the issues early on in the District Court Action and entered into a settlement agreement.

Later, the Plaintiffs alleged that the Debtor violated the settlement agreement and filed an amended complaint in the District Court Action to include a breach of settlement claim. By the amended complaint, the Plaintiffs sought to hold the Debtor liable for various claims, including cybersquatting, trademark infringement, and copyright infringement. The Debtor filed an answer

to the amended complaint and asserted various counterclaims.  The parties engaged in extensive litigation regarding their claims for the next year.[1]  During this time, the District Court entered a Third Trial Preparation Conference Order which set a final pretrial conference and a jury trial. About five months prior to the scheduled trial, Debtor's counsel in the District Court Action requested that he be allowed to withdraw as counsel and the District Court granted counsel's request.  The Debtor failed to retain new counsel.

Three days prior to the final pretrial conference, the Debtor filed a motion to continue the trial.  The District Court entered an Order to Show Cause, directing the Debtor to show cause why a default should not be entered against him for failing to defend the Plaintiffs' claims and failing to comply with the District Court's rules and orders in preparing for trial.  The Order to Show Cause also directed the Debtor to show cause why his counterclaims against the Plaintiffs should not  be dismissed as a sanction for failing to comply with the District Court's orders and rules.   The Debtor appeared *pro se* at the final pretrial conference and filed a response to the Order to Show Cause.

The District Court subsequently entered an Order Making Order to Show Cause Absolute and for Entry of Default and Dismissal of Counterclaims against the Debtor (the "Default Order").  By the Default Order, the District Court entered a default against the Debtor on all of the Plaintiffs' claims and dismissed the Debtor's counterclaims with prejudice.  The District Court made twelve pages of factual findings and legal conclusions to support entry of a default against the Debtor.  Those findings included the following:

> In recent months, the plaintiffs repeatedly and assiduously sought the cooperation of Mr. Propster in preparing this case for trial. Notwithstanding, Mr. Propster has, at best, responded to the requests of the plaintiffs with inexplicit and unfulfilled promises of future action. Concerning any form of trial preparation, Mr.

Propster is missing in action. Mr. Propster replied to precious few of the many e-mails from counsel for the plaintiffs, but tellingly, he never engaged in any of the trial preparations required in the Third Trial Preparation Conference Order [#142].[2]

\*\*\*

At the [final pretrial conference], Mr. Propster said he intends to seek counsel to represent him. However, he did not specify at the hearing and does not specify in his papers any efforts he has made to obtain counsel and does not identify any future plans to obtain counsel. At the [final pretrial conference] he reported also that he does not have the financial resources to fly to Denver for the trial of this case….Mr. Propster did not specify at the hearing and does not specify in his papers any specific, realistic plans to obtain the funding essential to his retention of counsel or to his appearance at trial.[3]

\*\*\*

In his response [#188] to the **Order To Show Cause** [#182], Mr. Propster asserts that he needs time to get up to speed and reiterates his request, also asserted in a motion to continue [#181], for a continuance of the trial. Mr. Propster says he will "enthusiastically" prepare for trial if he is granted a 90 day continuance. *Response* [#188], p. 4. In addition, he says he intends to continue to seek counsel. *Id*. He notes also that the court "has made clear the implications for failures on Defendants part to comply with the Court's Orders." *Id*. Neither in his motion to continue [#181] nor in his response [#188] to the **Order To Show Cause** does Mr. Propster explain credibly and cogently why he has failed to engage in any substantive trial preparation since his counsel withdrew five and one-half months ago. He provides no details about his purported plan to prepare for trial in the next 90 days. He does not explain how an additional 90 days – as opposed to some shorter or longer period of time – will be adequate for his trial preparation when the past five and one-half months have, for reasons unstated, been inadequate.[4]

Three months after entry of the Default Order, the District Court entered an Order Granting Motions for Default Judgment and a Final Judgment in favor of the Plaintiffs and against the Debtor and others, jointly and severally, for cybersquatting, willful trademark infringement, and willful copyright infringement (collectively the "Default Judgment"). By the

Default Judgment, the District Court determined that as a result of the Debtor's failures to comply with Court orders, that the Debtor has admitted all of the factual allegations asserted in the amended complaint. And, based upon these admitted findings, the Court concluded that the allegations of the amended complaint were sufficient to establish claims for cybersquatting, willful trademark infringement and willful copyright infringement. The District Court also awarded the Plaintiffs statutory damages for the cybersquatting claim and enhanced statutory damages for willful trademark infringement and willful copyright infringement, all totaling $7.75 million.

After entry of the Default Judgment, the Plaintiffs requested and the Court granted an award of their attorney fees and costs incurred in the District Court Action with respect to the willful trademark and willful copyright infringement claims. In awarding fees, the District Court stated that "[p]articularly in light of the *willful* nature of the trademark and copyright infringement at issue in this case, and the need to promote and protect considerations of compensation and deterrence, the operative facts of this case warrant an award of attorney fees…"[5]   After deducting attorney fees for work done on other claims, the District Court awarded the Plaintiffs attorney fees of $684,163.66 and costs of $18,940.30 (the "Attorney Fee Order").

In 2016, the Plaintiffs recorded the Default Judgment in Florida and commenced discovery in aid of execution. In an effort to avoid compliance with that discovery, the Debtor filed a motion to reopen his bankruptcy case to add the Plaintiffs as creditors and to discharge their claims. This Court granted the motion to reopen the Debtor's bankruptcy case. In response, the Plaintiffs filed this adversary proceeding asserting that their debt is not dischargeable under Section 523(a)(6) of the Bankruptcy Code as a willful and malicious injury.[6]

The Debtor, *pro se*, filed an answer asserting that the debt is dischargeable.  The Plaintiffs now seek summary judgment, arguing that collateral estoppel bars the Debtor from relitigating whether he willfully and maliciously injured the Plaintiffs. The Debtor, who is now represented by counsel, responds that collateral estoppel does not apply because (i) the District Court Action was not actually litigated (it was a default judgment) and, (ii) even if actually litigated, the District Court's finding of willful copyright infringement could be based on a finding of recklessness as opposed to willful misconduct, and that any finding of willfulness by the District Court was in error.

### Conclusions of Law

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law".[7]  Here, the parties do not dispute the fact that the District Court entered the Default Order, Default Judgment and Attorney Fee Order (collectively the "District Court Orders") against the Debtor. The parties, however, dispute that entry of the District Court Orders entitle Plaintiffs to a judgment of nondischargeability under Section 523(a)(6) of the Bankruptcy Code as a matter of law.  To resolve the dispute, the Court must examine whether the District Court Orders establish a debt for a willful and malicious injury, and by collateral estoppel, prohibit the Debtor from relitigating the issue before this Court.

### Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. §1334(b).  This is a core proceeding under 28 U.S.C. §157(b)(2)(I).

Section 523(a)(6) of the Bankruptcy Code

Section 523(a)(6) of the Bankruptcy Code provides that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable.[8]  To prove nondischargeability, the movant must demonstrate that the injury at issue is both willful *and* malicious.  Willfulness requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another".[9]  And, the debtor must commit an act "the purpose of which is to cause injury or which is substantially certain to cause injury."[10]  Malice requires that the debtor's act be "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will".[11]  "Malice may be implied or constructive";[12] "a showing of specific intent to harm another is not necessary".[13]

Collateral Estoppel

Collateral estoppel prohibits a party from relitigating an issue adjudicated in a prior action "if the party against whom the prior decision is asserted had a full and fair opportunity to litigate that issue in an earlier case."[14]  A bankruptcy court may, on its discretion, apply collateral estoppel principles in dischargeability proceedings "to reach conclusions about certain facts, foreclose relitigation of those facts, and then consider those facts as 'evidence of nondischargeability'."[15]

Because the District Court Orders were issued by a federal court, this Court must apply federal collateral estoppel law.[16]  Under federal law, to preclude a party from relitigating an issue in a dischargeability proceeding, the following four requirements must be met:

> (1) the issue in the prior action and the issue in the bankruptcy court are identical;
>
> (2) the bankruptcy issue was actually litigated in the prior action;

(3) the determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and,

(4) the burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the prior action.[17]

If all four requirements exist, "estoppel operates to bar the introduction or argumentation of certain facts necessarily established in [the] prior proceeding."[18]  The party asserting collateral estoppel has the burden to demonstrate that it is entitled to the relief.[19]

Here, the Plaintiffs have demonstrated that all four collateral estoppel requirements are met.  Disposing quickly of the fourth requirement, the Plaintiffs' burden of persuasion in this discharge proceeding--an ordinary preponderance of the evidence standard--is the same burden that the Plaintiffs had pursing the claims for cybersquatting, willful trademark infringement and willful copyright infringement in the District Court Action.[20]

As to the first and third requirements, the issues critical and necessary for the District Court to find the Debtor liable for cybersquatting, willful trademark infringement and willful copyright infringement are identical to those necessary to establish a willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code.[21]

The Anticybersquatting Consumer Protection Act, Section 43(d) of the Lanham Act,[22] provides that "A person shall be liable in a civil action by the owner of a mark... if... that person... has a bad faith intent to profit from that mark...; and... registers, traffics in, or uses a domain name that...is identical or confusingly similar to that mark."[23]   To prevail on a cybersquatting claim, the plaintiff must show a bad faith intent to profit by the defendant.[24]  And, bad faith intent "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or

otherwise lawful."[25]  Cybersquatting meets the willful requirement since it requires a bad faith intent to profit at the plaintiff's expense,[26] and always results in harm.[27]  And because cybersquatting requires a bad faith intent that cannot be found in any case where a person "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful", a debtor's use of the plaintiffs' domain name would be without just cause or excuse and thus satisfies the malicious requirement.[28]

Trademark infringement under Section 32(1) of the Lanham Act,[29] and copyright infringement under the Copyright Act of 1976,[30] are strict liability statutes that do not require the plaintiff to prove knowledge or intent to establish the defendant's liability.[31]  A plaintiff, however, may obtain an enhanced award of statutory damages under each statute for a defendant's willful infringement.[32]  To demonstrate a willful infringement, the plaintiff must show that the defendant acted with actual knowledge or a reckless disregard for the infringing conduct.[33]  And, the plaintiff may be awarded reasonable attorney fees in an "exceptional" trademark infringement case,[34] or as a prevailing party in a copyright infringement case.[35]  A trademark infringement case is "exceptional" when "a trademark infringement is malicious, fraudulent, deliberate or willful."[36]

Because the term "willful" includes a defendant's reckless disregard, a judgment for willful trademark infringement or willful copyright infringement may not satisfy the requirements for a willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code. The Debtor argues that his reply to the amended complaint in the District Court Action demonstrates that he did not know or intend any infringements, and as a result, the District Court Orders finding the Debtor liable for willful infringements are based on Debtor's recklessness.

The Debtor further contends, by affidavit, that the underlying facts do not support the District Court's entry of the Default Judgment or a finding of a knowing and intentional infringement.

The Eleventh Circuit requires this Court to review the entire record of the District Court Action to determine if the willful and malicious standard of Section 523(a)(6) was met.[37] Here, the District Court found that the Debtor admitted the factual allegations in the amended complaint.[38] The amended complaint contains, among others, the following factual allegations:

> 62. Defendants *intentionally* adopted and continue to use Plaintiffs' SALBA Marks *with full knowledge* of Plaintiffs' superior rights, and with *full knowledge* that their unauthorized and infringing use of Plaintiffs' SALBA Marks is intended to cause confusion, mistake or deception. As such, Defendants' use of the counterfeit version of the SALBA Marks *is willful, intentional and done with knowledge that the marks, were counterfeit marks*, as defined in Section 34(d)(1)(B) of the Lanham Act, 15 U.S.C. §1116(d)(1)(B).[39] (emphasis added)

> 123. Without authorization, Defendants have willfully copied large portions of U.S. Copyright Registration No. VAu001018274 and placed it on Defendants' products on-line and in stores. This unauthorized reproduction, public display, distribution, and modification of Plaintiff Salba Corp.'s U.S. Copyright Registration, No. VAu001018274 constitutes copyright infringement in violation of 17 U.S.C. §101 et. seq.[40]

> 126. Defendants' actions [copyright infringement] have been *intentional and willful*.[41](emphasis added)

Having reviewed the amended complaint in its entirety and in particular, the paragraphs cited above, the record is clear that the District Court Orders are based on intentional infringements by the Debtor, and not mere recklessness. As to the Debtor's argument that the District Court erred in so finding, this Court has no jurisdiction to act as an appellate court and re-evaluate the District Court's findings and conclusions, even if they are wrong.[42]

Although none of the District Court Orders use the word malice *per se,* such a specific finding is not necessary for collateral estoppel purposes. "Rather the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was 'malicious' sufficient to satisfy Section 523(a)(6).[43] Based upon the admitted allegations of the complaint, the Debtor's conduct was malicious as being without just cause or excuse. There is no allegation that Debtor had any just cause or concern over whether the trademark rights were truly owned by Plaintiffs. Indeed, even after the Debtor had agreed by the Settlement Agreement that the trademarks belonged to Plaintiff and that Debtor would no longer use them, he continued to do so. These findings establish maliciousness within the meaning of Section 523(a)(6) and is thus an identical and necessary issue.

As to the second collateral estoppel requirement, the issue of willful and malicious injury was "actually litigated" in the District Court Action. "Ordinarily a default judgment will not support the application of collateral estoppel because in the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."[44] But, where a party has substantially participated in a prior action with a full and fair opportunity to defend on the merits and later decides not to do so, a court may apply collateral estoppel to cease further litigation of the issues resolved by the default judgment.[45] The Debtor argues that the District Court Action was not fully litigated because he did not proceed *pro se* after his counsel withdrew.[46] The Debtor explains that he was "no longer allowed to participate in the litigation due to financial, health and familial problems."[47] He therefore argues that he did not have a full and fair opportunity to defend on the merits.

The District Court record does not support the Debtor's assertions. The District Court record, and in particular the Default Order, demonstrates that the Debtor actively participated in

the District Court Action. Even after Debtor's counsel withdrew from the case, the Debtor filed a motion to continue the trial, made representations to the District Court at the final pretrial conference, and filed a response to the District Court's order to show cause. Although the Debtor did not fully participate in trial preparations that lead to the entry of the Default Order, the Debtor substantially participated in and had a full and fair opportunity to defend on the merits in the District Court Action. Having considered all four requirements of collateral estoppel and the facts of this case, the Court exercises its discretion and finds that collateral estoppel applies to the District Court Orders.[48] Accordingly, the $7,750,000 judgment is nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

In addition to the final judgment award, the District Court also granted attorneys' fees (in the amount of $684,163.66) and costs (in the amount of $22,282.70) incurred by the Plaintiffs in connection with their claims for trademark and copyright infringement. Attorney fees and costs constitute a nondischargeable debt when they "result from" the debtor's conduct underlying the debt.[49] So, when a debt is deemed nondischargeable, the attorney's fees and costs related to that debt are also nondischargeable."[50] Here, the Attorney Fee Order resulted from the Debtor's intentional trademark and copyright infringement. As a result, the Court finds that the Attorney Fee Order is nondischargeable under Section 523(a)(6) of the Bankruptcy Code. For these reasons it is

ORDERED:

1.      The Motion for Partial Summary Judgment as supplemented (Doc. Nos. 7 and 20) is granted.

2.      The amounts owed by Defendant, Mitchell Allen Propster to Plaintiffs, SALBA Corp., N.A., SALBA Smart Naturals Products, LLC, William A. Ralston, and Richard L. Ralston

pursuant to the Final Judgment and Attorney Fee Order entered by the United States District Court for the District of Colorado in *SALBA Corp. N.A. v. X Factor Holdings, LLC*, Civil Action No. 12-cv-01306-REB-KLM are nondischargeable under Section 523(a)(6) of the Bankruptcy Code.

3.    A separate Judgment consistent with this order shall be entered contemporaneously.

Attorney Michael Tessitore is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[1] The Debtor admits that the parties engaged in extensive litigation prior to his counsel withdrawal of representation (Doc. No. 11 par. 6i).  Further, this Court takes judicial notice of the District Court Action civil docket with respect to the papers filed by the Plaintiffs and Debtor and the date the papers were filed with the District Court. See Doc. No.12-1.  A court may take judicial notice on its own at any stage of a proceeding of a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Fed. R. Evid. 201*.

[2] *See* Default Order (Doc. No. 7-1, pg. 55).

[3] *See* Default Order (Doc. No. 7-1, pg. 56).

[4] *See* Default Order (Doc. No. 7-1, pg. 56-57).

[5] *See* Attorney Fee Order (Doc. No. 7-1, pg. 66).

[6] The Plaintiffs' complaint also seeks a declaratory judgment that the District Court's orders and injunction were not stayed, discharged or affected in any way by the Debtor's bankruptcy case.   Clearly, the Plaintiffs' initiation of the District Court Action and settlement of the District Court Action occurred while the automatic stay was in effect. Generally, acts taken in violation of the automatic stay are void.  *See In re Albany Partners, Ltd*., 749 F.2d 670, 675 (11th Cir. 1984). The Eleventh Circuit has, however, recognized that bankruptcy courts may annul the automatic stay in appropriate limited circumstances, in order to grant retroactive relief from the automatic stay. *Id*.  Having considered the Debtor's active participation in the District Court Action for over three years without noticing the Plaintiffs or the District Court of his bankruptcy, the Debtor's failure to add the Plaintiffs as creditors or disclose the settlement agreement as directed in the Notice of Conversion of Case from Chapter 13 to Chapter 7, the Debtor's delay in amending the schedules until after the District Court's entry of an adverse judgment, and the Plaintiffs' incurring a substantial amount of attorney fees and costs in the District Court Action, the Court finds that the automatic stay should be annulled as of October 11, 2011 (the Petition Date) as to all of the Plaintiffs' claims, including any actions, orders or injunctions entered by the District Court in the District Court Action.

[7] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

[8] See 11 U.S.C. §523(a)(6).

[9] *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163 (11th Cir. 1995) (internal quotation marks omitted).

[10] *Walker,* 48 F.3d at 1165. *See also Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).

[11] *Walker,* 48 F.3d at 1164.

[12] *Id.*

[13] *Id.*

[14] *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir.1993) (internal quotation marks omitted); *Nguyen v. Biondo* (*In re Biondo*), 2014 WL 2702891 (Bankr. S.D. Fla. June 13, 2014).

[15] *In re Thomas*, 288 Fed. Appx. 547, 548 (11th Cir. 2008). *See also Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991*); Bush v. Balfour Beatty Bahamas, Ltd*. (*In re Bush),* 62 F.3d 1319, 1322 (11th Cir. 1995).

[16] *See Biondo,* 2014 WL 2702891 at *5.

[17] *See Bush*, 62 F.3d at 1322.

[18] *Tampa Bay Water v. HDR Eng'g Inc*., 731 F.3d 1171, 1180 (11th Cir. 2013) (citation omitted).

[19] *See Dowling v. United States*, 493 U.S. 342, 350 (1990).

[20] *See Grogan v Garner*, 498 U.S. 279 (1991) (preponderance of the evidence is the standard of proof for dischargeability exceptions under Section 523(a) of the Bankruptcy Code); *Fishman Transducers, Inc., v. Pau*l, 684 F.3d 187, 192-93 (1st Cir. 2012)(preponderance of the evidence is the standard of proof for Lanham Act claims); *World Wide Ass'n of Specialty Programs v. Pure, Inc*., 450 F.3d 1132, 1140 (10th Cir. 2006)(standard of proof for Lanham Act claim was preponderance of evidence); *Donald Frederick Evans Assoc. v. Cont'l Homes, Inc*., 785 F.2d 897,903 (11th Cir. 1986)(copyright infringement claim is proven by a preponderance of the evidence); *Sunward Corp. v. Henry's Safety Supply Co.,* 1990 WL 73388 (D. Colo. May 30, 1990)(plaintiff failed to prove trademark infringement claim under Lanham Act by a preponderance of the evidence).

[21] In the Response, the Debtor concedes that the issues in this proceeding and the District Court Action are identical. See Doc. No. 11, par. 19.

[22] 15 U.S.C. § 1125(d).

[23] 15 U.S.C. § 1125(d)(1)(A).

[24] See 15 U.S.C. § 1125(d)(1)(A). *See also Southern Grouts & Mortars, Inc. v. 3M Co*., 575 F.3d 1235, 1249 (11th Cir. 2009)(cybersquatting claim fails on the merits because the plaintiff did not show defendant had a bad faith intent to profit); *Utah Lighthouse Ministry v. Foundation for Apologetic Info. and Research*, 527 F.3d 1045, 1059 (10th Cir. 2008)(District Court properly granted summary judgment for defendant on cybersquatting claim because defendant lacked a bad faith intent to profit).

[25] 15 U.S.C. § 1125(d)(1)(B)(ii).

[26] *See HER, Inc. v. Barlow* (*In re Barlow)*, 478 B.R. 320, 335 (Bankr. S.D. Ohio 2012). *See also Skydive Ariz. Inc. v. Butler (In re Butler)*, 2013 WL 5591922 *4-5 (Bankr. N.D. Ga. Sept. 9, 2013).

[27] *See Nguyen v. Biondo* (*In re Biondo)*, 2014 WL 2702891, *7 (Bankr. S.D. Fla. June 13, 2014).

[28] *See Barlow*, 478 B.R. at 335 (quoting 15 U.S.C. § 1125(d)(1)(B)(ii)). *See also Biondo* at *6.

[29] *See* 15 U.S.C. § 1114(1) which states "Any person who shall… use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods…which such use is likely to cause confusion, or to cause mistake or to deceive... shall be liable in a civil action by the registrant…"

[30] *See* 17 U.S.C. § 501(a) which states "Anyone who violates any of the exclusive rights of the copyright owner… is an infringer of the copyright."

[31] *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp.3d 137, 153, 156 (E.D. NY 2016). *See also Taubman Co. v. Webfeats*, 319 F.3d 770,775 (6th Cir. 2003)(Lanham Act is a strict liability statute); *This, LLC v. Jaccard Corp.*, 2017 WL 547902, *6 n.6 (D. Conn. Feb. 2, 2017)(trademark and copyright infringement are strict liability offenses); *Kohus v. Graco Children's Products Inc.*, 13 F.Supp.3d 829, 838 (S.D. Ohio 2014) (copyright infringement claim is fundamentally founded on strict liability); *Lorillard Tobacco Co. v. Amoco & Food Shop 5, Inc.*, 360 F.Supp.2d 882, 885-86 (N.D. Ill. 2005)(strict liability for violations of Lanham Act).

[32] *See* 15 U.S.C. §1117(c), 17 U.S.C. §504(c).

[33] *See Yellow Pages Photos, Inc., v. Ziplocal, LP,* 795 F.3d 1255, 1271-72 (11th Cir. 2015)(willful copyright infringement includes a defendant's knowing violation of an infringement or a defendant's reckless disregard that one's actions are an infringement); *Anthem Industries, LLC v. Dawson*, 2017 WL 6996371 (N.D. Ga. Oct. 31, 2017)(willful trademark infringement has been defined as when the infringer acted with actual knowledge or reckless disregard); *NBA Properties, Inc. v. Yan Zhou*, 2017 WL 4074020 (N.D. Ill. Sept. 14, 2017)(willful trademark infringement may be attributed when the defendant knew the conduct constituted infringement or the defendant showed a reckless disregard for the plaintiff's rights).

[34] *See* 15 U.S.C. § 1117(a).

[35] *See* 17 U.S.C. § 505.

[36] *United Phosphorus, Ltd. v. Midland Fumigant, Inc*., 205 F.3d 1219,1232 (10th Cir. 2000).

[37] *See Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163, 1166 (11th Cir. 1987); *Skydive Ariz. Inc. v. Butler (In re Butler)*, 2013 WL 5591922 *4-5 (Bankr. N.D. Ga. Sept. 9, 2013).

[38] *See* Default Judgment (Doc. No. 7-1, pg. 47).

[39] *See* Amended Complaint (Doc. No. 7-1, pg. 22).

[40] *See* Amended Complaint (Doc. No. 7-1, pg. 33).

[41] *See* Amended Complaint (Doc. No. 7-1, pg. 34).

[42] *See* 28 U.S.C. 1294. *See also Teachers Ins. and Annuity Ass'n of America v. Butler,* 803 F.2d 61, 66 (2nd Cir. 1986)(allowing a bankruptcy court to rehear claims already reduced to judgment by a district court subverts the intent of 28 U.S.C. § 1294(1) which provides that appeals from district court decisions are to be heard by the court of appeals for the circuit that embraces the district).

[43] *Indo-Med Commodities, Inc. v. Wisell (In re Wisell),* 494 B.R. 23, 42 (Bankr. E.D. N.Y. 2011). *See also Ocean Innovations, Inc. v. Ahern (In re Ahern),* 541 B.R. 438,448 (Bankr. W.D. Wis. 2015); *Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum),* 513 B.R. 788, 803 (Bankr. E.D. N.Y 2014).

[44] *Bush v. Balfour Beatty Bahamas, Ltd*. (*In re Bush),* 62 F.3d 1319, 1323 (11th Cir. 1995)(internal quotations omitted).

[45] *See Bush*, 62 F.3d at 1325.

[46] *See* Doc. No. 11, par. 17.

[47] Doc. No. 11, par.6i.

[48] *See Bush*, 62 F.3d at 1325 n.8 (11th Cir. 1995)(whether to allow issue preclusion is within the sound discretion of the court).

[49] *See Harry Bradford Barrett Residuary Trust v. Barrett (In re Barrett),* 410 B.R. 113, 123-24 (Bankr.S.D.Fla.2009) (citing *Cohen v. de la Cruz*, 523 U.S. 213(1998)).

[50] *Barrett,* 410 B.R. at 124. *See also K & K Ins. Grp., Inc. v. Houston (In re Houston)*, 305 B.R. 111, 116 (Bankr.M.D.Fla.2001); *USAA Cas. Ins. Co. v. Auffant (In re Auffant)*, 268 B.R. 689, 695-96 (Bankr.M.D.Fla.2001).